IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

BRYAN ZESIGER and GINA ZESIGER,

       Plaintiffs,

       v.                                                                    Case No. 2:25-CV-02324-JAR-RES

LEAVENWORTH COUNTY, KANSAS, and
MISTY BROWN,

       Defendants.

## MEMORANDUM AND ORDER

Plaintiffs Bryan Zesiger and Gina Zesiger, proceeding *pro se*, filed this removal action against Defendants Leavenworth County, Kansas, and Misty Brown, alleging that Defendants' handling of Plaintiffs' Kansas Open Records Act requests violated Kansas law and the U.S. Constitution. This matter is now before the Court on Defendants' Motion to Dismiss (Doc. 3) under Fed. R. Civ. P. 12(b)(5) and 12(b)(6). Plaintiffs have not filed a response, and the time to do so has expired.[1] For the reasons stated below, the Court grants Defendants' motion. However, the Court also grants Plaintiffs leave to amend to cure the pleading deficiencies identified in this Order and grants Plaintiffs an extension of time to effect proper service.

## I.    Background

Plaintiffs filed this action in the District Court of Leavenworth County, Kansas on May 28, 2025. The following facts are alleged in Plaintiffs' Petition.[2] For purposes of deciding this motion, the Court assumes these facts to be true and draws all reasonable inferences in Plaintiffs' favor.

---

[1] *See* D. Kan. R. 6.1(d)(1) (providing a 21-day response deadline for dispositive motions).

[2] Doc. 1-1.

On May 14, 2025, Plaintiffs filed a Kansas Open Records Act ("KORA") request with Defendant Leavenworth County concerning "zoning activities and third-party involvement."[3] Within hours, the subject of the request, Raymond Reynolds, was notified of the request despite no publication or external notice by Plaintiffs. Reynolds then contacted Plaintiffs' neighbor, Ed Irvine, and relayed details about Plaintiffs' KORA request that was accessible only to "County insiders."[4] That same day, Defendant Misty Brown issued a blanket denial of all of Plaintiffs' outstanding KORA requests. Thereafter, Plaintiffs had to de-escalate tensions through written communication with Reynolds.

On May 25, 2025, a licensed surveyor identified as "Mr. Herring" told Plaintiffs that a "County Commissioner" stated: "[w]e can't get your project signed off because Misty Brown is too busy dealing with all of [Plaintiffs'] KORA requests."[5]

Liberally construing the Petition, as the Court must,[6] Plaintiffs assert three claims under 42 U.S.C. § 1983: (1) denial of access to the courts; (2) violation of procedural due process; and (3) First Amendment retaliation. Plaintiffs also assert three state-law claims: (1) violations of §§ 1 and 15 of the Kansas Bill of Rights; (2) violation of the Kansas Open Records Act ("KORA"); and (3) violation of the Kansas Medicaid Fraud Control Act. Plaintiffs served the Petition on Misty Brown, the Leavenworth County Counselor, on May 29, 2025. On June 13, 2025, Defendants removed the case to this Court under 28 U.S.C. §§ 1331, 1441, 1443, and 1446. Defendants now move to dismiss Plaintiffs' claims under Fed. R. Civ. P. 12(b)(5) and 12(b)(6).

---

[3] *Id.* pt. III.

[4] *Id.*

[5] *Id.*

[6] *See Whitney v. New Mexico*, 113 F.3d 1170, 1173 (10th Cir. 1997).

## II.    Standard

### A.  Rule 12(b)(6): Failure to State a Claim

To survive a motion to dismiss brought under Fed. R. Civ. P. 12(b)(6), a complaint must contain factual allegations that, assumed to be true, "raise a right to relief above the speculative level"[7] and include "enough facts to state a claim to relief that is plausible on its face."[8]  The plausibility standard does not require a showing of probability that "a defendant has acted unlawfully," but requires more than "a sheer possibility."[9]  "[M]ere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim."[10]  The Court must accept the nonmoving party's factual allegations as true and may not dismiss on the ground that it appears unlikely the allegations can be proven.[11]  The Court will view all well-pleaded factual allegations in the light most favorable to Plaintiffs.[12]  And because Plaintiffs proceed *pro se*, the Court must construe their filings liberally and hold them to a less stringent standard than formal pleadings drafted by attorneys.[13]  However, Plaintiffs' *pro se* status does not excuse them from complying with federal and local rules.[14]

---

[7] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[8] *Id.* at 570.

[9] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[10] *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555).

[11] *Iqbal*, 556 U.S. at 678.

[12] *Jordan-Arapahoe, LLP v. Bd. of Cnty. Comm'rs of Cnty. of Arapahoe, Colo.*, 633 F.3d 1022, 1025 (10th Cir. 2011).

[13] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[14] *Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994); *see* D. Kan. Rule 83.5.4(f) ("Any party appearing on his or her own behalf without an attorney is expected to read and be familiar with the Rules of Practice and Procedure of this court [and] the relevant Federal Rules of Civil Procedure . . . .").

### B. Rule 12(b)(5): Insufficient Service of Process

When a defendant moves to dismiss on the basis of insufficient service of process, "the burden shifts to the plaintiff to make a prima facie showing that they served process properly."[15] In ruling on a Rule 12(b)(5) motion to dismiss, the court "may consider any 'affidavits and other documentary evidence' submitted by the parties and must resolve any 'factual doubt' in a plaintiff's favor."[16] "A *pro se* plaintiff still must comply with Rule 4 and Kansas law for service of process."[17]

## III. Discussion

### A. Failure to State a Claim

The Court begins its analysis with Defendants' Rule 12(b)(6) arguments directed at Plaintiffs' federal claims. Specifically, the Court considers: (1) whether "Leavenworth County, Kansas" has the capacity to be sued under Kansas law; (2) whether the Petition plausibly alleges a constitutional violation cognizable under 42 U.S.C. § 1983; and (3) whether Plaintiffs plead a viable basis for municipal liability against Defendant Leavenworth County. As explained below, the Court finds that Plaintiffs have failed to state a claim on their federal theories. Accordingly, the Court does not reach Defendants' arguments directed at Plaintiffs' state-law claims.

#### 1. "Leavenworth County, Kansas" lacks the capacity to be sued under Kansas law

Under Fed. R. Civ. P. 17(b)(3), courts determine a party's capacity to be sued in federal court by examining the law of the state where the court is located. K.S.A. § 19-105 requires:

---

[15] *Schwab v. Kansas*, No. 16-CV-4033-DDC-KGS, 2016 WL 4039613, at *3 (D. Kan. July 28, 2016) (citing *Fisher v. Lynch*, 531 F. Supp. 2d 1253, 1260 (D. Kan. 2008)).

[16] *Id.* (quoting *Fisher*, 531 F. Supp. 2d at 1260).

[17] *Wanjiku v. Johnson County*, 173 F. Supp. 3d 1217, 1228 (D. Kan. 2016).

"[i]n all suits or proceedings by or against a county, the name in which the county shall sue or be sued shall be 'The board of county commissioners of the county of _____[.]'"  Here, Plaintiffs name "Leavenworth County, Kansas" itself as a Defendant in this case instead of the Board of County Commissioners of Leavenworth County, as Kansas law requires.  Accordingly, because "Leavenworth County, Kansas" is not a legal entity with the capacity to be sued, Plaintiffs' claims against Defendant Leavenworth County fail to state a claim for relief.

### 2.  42 U.S.C. § 1983 Claims

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."[18]  Plaintiffs appear to assert three constitutional theories under § 1983: (1) denial of access to the courts; (2) violation of procedural due process; and (3) First Amendment retaliation.  While liberally construing Plaintiffs' Petition, the Court addresses each of these in turn.

### a.    Denial of Access to Courts

To state a plausible claim for unconstitutional denial of access to the courts, a "plaintiff must identify a 'nonfrivolous,' 'arguable' underlying claim" that has been frustrated or impeded by the official act or acts that interfere with access to the courts.[19]  The underlying claim is an element that must be described in the complaint as though it were being independently pursued.[20] In other words, the underlying claim must be described well enough to permit evaluation of whether it is "nonfrivolous" and "arguable."[21]

---

[18] *West v. Atkins*, 487 U.S. 42, 48 (1988).

[19] *Christopher v. Harbury*, 536 U.S. 403, 414–15 (2002).

[20] *Id.* at 404.

[21] *Id.* at 414–16.

Here, Plaintiffs do not identify any underlying claim in their Petition: they do not state against whom a claim would be brought, in what forum, or what relief is sought, nor do they allege any of the purported facts giving rise to any such claim.  The Petition merely cites *Christopher v. Harbury*,[22] and states "[i]nterference with access to courts."[23]  This does not satisfy the requirement to plead the underlying claim "as though it were being independently pursued," nor does it allow the Court to evaluate whether any such claim is "nonfrivolous" and "arguable."[24]

Nor do Plaintiffs allege facts showing how the denial of their KORA requests, the alleged leak of the May 14, 2025 KORA request to Reynolds, or the commissioner's statement about Plaintiffs' KORA requests "frustrated or impeded" Plaintiffs' efforts to pursue any specific claim.  Plaintiffs thus fail to state a plausible unconstitutional denial-of-access-to-the-courts claim.

### b.  Procedural Due Process

The Constitution's Due Process Clause protects the right to a certain level of procedural protection before a governmental deprivation of one's liberty or property interests.[25] Stigmatizing statements by government actors that damage someone's good name or reputation without the opportunity for a name-clearing hearing can, under certain circumstances, violate their rights to procedural due process.[26]  However, "stigmatization or reputational damage alone, no matter how egregious, is not sufficient to support a § 1983 cause of action."[27]  This is because

---

[22] 536 U.S. 403 (2002).

[23] Doc 1-1 pt. IV.B.

[24] *See Christopher*, 536 U.S. at 414–16.

[25] *McCurdy v. Unruh*, No. 2:25-CV-02041-HLT-RES, 2025 WL 2336454, at *2 (D. Kan. Aug. 13, 2025).

[26] *Hinkle v. Beckham Cnty. Bd. of Cnty. Comm'rs*, 962 F.3d 1204, 1229–30 (10th Cir. 2020).

[27] *McGhee v. Draper*, 639 F.2d 639, 643 (10th Cir. 1981).

"reputation alone, apart from some more tangible interests such as employment, is [n]either 'liberty' [n]or 'property' by itself sufficient to invoke the procedural protection of the Due Process Clause."[28]

Instead, a plaintiff must meet what courts commonly describe as the "stigma-plus" standard.[29]  The stigma-plus standard contains two distinct elements: "(1) the government made a false statement about the plaintiff that was sufficiently derogatory to injure his reputation, and that (2) the plaintiff experienced a governmentally imposed burden that significantly altered his status as a matter of state law."[30]  To meet the second prong, the Tenth Circuit has "required an alteration of a state-recognized right to allege a stigma-plus claim."[31]

Classic examples of a "significant, material change in a legal status" include "losing the right to drive a car or being wrongfully registered as a sex offender."[32]  Other examples include losing the right to buy liquor, wholly preventing any federal employment, or barring a person from attending school.[33]  In contrast, injuries such as psychological trauma or impaired prospective employment opportunities do not alter a person's legal status.[34]  Furthermore, "a benefit is not a protected entitlement if government officials may grant or deny it in their discretion."[35]

---

[28] *Paul v. Davis*, 424 U.S. 693, 701 (1976); *see also Brown v. Montoya*, 662 F.3d 1152, 1167 (10th Cir. 2011) ("[D]efamatory publications, however seriously they may have harmed respondent's reputation, did not deprive him of any 'liberty' or 'property' interests protected by the Due Process Clause." (quoting *Paul*, 424 U.S. at 712)).

[29] *See Hinkle*, 962 F.3d at 1229.

[30] *Progeny v. City of Wichita*, No. 621CV01100EFMADM, 2024 WL 359345, at *7 (D. Kan. Jan. 30, 2024) (quoting *Hinkle*, 962 F.3d at 1230).

[31] *Al-Turki v. Tomsic*, 926 F.3d 610, 618 (10th Cir. 2019).

[32] *Hinkle*, 962 F.3d at 1231.

[33] *Al-Turki*, 926 F.3d at 617 (summarizing cases).

[34] *See Hinkle*, 962 F.3d at 1230–31.

[35] *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005).

Here, Plaintiffs fail to plausibly allege either prong of the stigma-plus standard.  First, they do not identify a false, sufficiently derogatory statement made by the government about them.  The alleged "leak" conveyed only that Plaintiffs filed a KORA request concerning Reynolds, which, according to Plaintiffs' own Petition, is a true fact and not a false statement. The commissioner's remark to Herring—that the county "can't get [Herring's] project signed off because Misty Brown is too busy dealing with [Plaintiffs'] KORA requests"[36]—likewise is not alleged to be false, particularly where the Petition admits Plaintiffs filed a KORA request on May 14, 2025.  In fact, nowhere in Plaintiffs' Petition do they allege that either the leak or the commissioner's statement was false.  As such, Plaintiffs have not established the "stigma" component of their stigma-plus claim.

Second, even if Plaintiffs had alleged a false and sufficiently derogatory statement, they still do not plead a government-imposed burden that "significantly altered [their] status as a matter of state law."[37]  Plaintiffs do not allege, for example, the loss of a license necessary to operate their business, the loss of the right to drive, wrongful registration as a sex offender, the loss of the right to purchase liquor, a complete bar from federal employment, exclusion from attending school, or any comparable change in legal status.  Thus, Plaintiffs have not alleged the "plus" component of their stigma-plus claim.  Accordingly, Plaintiffs fail to plausibly allege a violation of their procedural due process rights.

---

[36] Doc 1-1 pt. III.

[37] *Progeny v. City of Wichita*, No. 621CV01100EFMADM, 2024 WL 359345, at *7 (D. Kan. Jan. 30, 2024) (quoting *Hinkle*, 962 F.3d at 1230).

### c. First Amendment Retaliation

To plausibly state a claim for First Amendment retaliation, a plaintiff must show: (1) that the plaintiff was engaged in constitutionally protected activity; (2) the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct.[38]  "[W]hen the plaintiff alleges that the defendant's action was taken in retaliation for protected speech, our standard for evaluating that chilling effect on speech is objective, rather than subjective. . . .  '[A] trivial or de minimis injury will not support'" a First Amendment retaliation claim.[39]

Here, Plaintiffs allege no facts establishing that they engaged in constitutionally protected activity.  Plaintiffs only identify their submission of a KORA request on May 14, 2025.  But there is no First Amendment right to obtain county records; any access right arises, if at all, from state law.[40]  On that basis alone, Plaintiffs' First Amendment retaliation theory fails at step one.

However, even if Plaintiffs' May 14, 2025 KORA request was a constitutionally protected activity, Defendants' actions would not, as a matter of law, chill a person of ordinary firmness from continuing to engage in protected activity.  The Tenth Circuit has held that a municipality's refusal to provide requested documents to a plaintiff was, at most, a de minimis injury insufficient to support a First Amendment retaliation claim.[41]  Likewise, Defendants' denial of Plaintiffs' KORA requests is, at most, a de minimis injury.  And Plaintiffs have not

---

[38] *McLinn v. Thomas Cnty. Sheriff's Dep't*, 535 F. Supp. 3d 1087, 1105 (D. Kan. 2021).

[39] *Eaton v. Meneley*, 379 F.3d 949, 954–55 (10th Cir. 2004) (quoting *Poole v. County of Otero*, 271 F.3d 955, 960 (10th Cir. 2001), *abrogated on other grounds by Hartman v. Moore*, 547 U.S. 250 (2006)).

[40] *See Shero v. City of Grove*, 510 F.3d 1196, 1202 (10th Cir. 2007) ("Clearly, then, [plaintiff] has no First Amendment right to receive the council packets from the City, but rather only a state right under the [Oklahoma Open Records Act] . . . .").

[41] *See id.* at 1204.

9

otherwise alleged facts showing that their speech was inhibited in any way by the denial of their KORA requests.

Furthermore, Plaintiffs' remaining allegations—the leak of their KORA request and the commissioner's comment relating to Plaintiffs' KORA requests—would not chill a person of ordinary firmness from continuing to engage in protected activity. "Even in the context of a First Amendment retaliation case, injury to one's reputation is not enough to establish a chilling effect,"[42] and no cognizable injury occurs if a defendant's disparaging statement "carried no penalties."[43]

Plaintiffs do not allege that they suffered penalties as a result of the leak or the commissioner's comment—no threat of violence, jail time, fine, or loss of a concrete benefit. Instead, Plaintiffs claim they merely had to "de-escalate tensions" with Reynolds and describe the commissioner's conduct as "defamatory and obstructive."[44] These allegations show only reputational harm and are therefore insufficient to establish an injury within the meaning of a First Amendment retaliation claim. As such, Plaintiffs fail to plausibly state a claim for First Amendment retaliation.

### 3. Municipal Liability

Even if Plaintiffs could state an underlying constitutional violation, a municipality may not be held liable under § 1983 solely because its employees caused injuries to a plaintiff.[45] Rather, municipal liability under § 1983 exists only when a plaintiff establishes (1) an official

---

[42] *Douglass v. Garden City Cmty. Coll.*, 652 F. Supp. 3d 1329, 1349 (D. Kan. 2023).

[43] *Schmidt v. Huff*, No. 25-CV-2081-EFM-GEB, 2025 WL 2374153, at *5 (D. Kan. Aug. 14, 2025) (quoting *Phelan v. Laramie Cnty. Cmty. Coll. Bd. of Trs.*, 235 F.3d 1243, 1248 (10th Cir. 2000)).

[44] Doc. 1-1 pt. III.

[45] *Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010).

policy or custom,[46] (2) that caused their civil rights injury, and (3) deliberate indifference by the government entity.[47]

Here, Plaintiffs' allegations that (1) a county insider disclosed Plaintiffs' May 14, 2025 KORA request to Reynolds and (2) a commissioner made a comment referencing Plaintiffs' KORA requests do not describe an official policy or custom.  Plaintiffs allege no facts showing that any of these acts were taken pursuant to a formal policy, reflected a widespread and well-settled practice, were made by a final policymaker, or resulted from a failure to adequately train or supervise employees amounting to deliberate indifference.

However, Plaintiffs do allege that Defendant Leavenworth County, acting through County Counselor Misty Brown, denied all of Plaintiffs' outstanding KORA requests.  This allegation plausibly alleges an official policy or custom because "[i]f the decision to adopt that particular course of action is properly made by that government's authorized decisionmakers, it surely represents an act of official government 'policy' as that term is commonly understood."[48]

Nevertheless, Plaintiffs fail to allege facts connecting the blanket denial of their KORA requests to a constitutional injury.  As previously discussed, the Petition states only in conclusory terms that Defendants "interfer[ed] with [Plaintiffs'] access to courts," that the commissioner's conduct was "defamatory and obstructive," and that Plaintiffs face a "[r]isk of continued

---

[46] An official policy or custom includes: (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.  *Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1283 (10th Cir. 2019).

[47] *Quintana v. Santa Fe Cnty. Bd. of Comm'rs*, 973 F.3d 1022, 1034 (10th Cir. 2020).

[48] *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986).

reputational harm and chilling of constitutionally protected activity."[49]  Even if Plaintiffs had

plausibly alleged a constitutional injury, Plaintiffs fail to allege facts from which deliberate

indifference by Defendant Leavenworth County can be plausibly inferred.  Absent factual

allegations of causation and deliberate indifference, Plaintiffs fail to plead a viable basis for

municipal liability against Defendant Leavenworth County.

### 4.  State-Law Claims

Having concluded that Plaintiffs fail to state any federal claim over which the Court has

original jurisdiction, the Court turns to the status of the remaining state-law claims.  Where, as

here, the federal claims are subject to dismissal under Rule 12(b)(6), a court has discretion over

whether to exercise supplemental jurisdiction.[50]  And in this sort of case, the Supreme Court has

instructed courts generally to decline to exercise it.[51]  Even so, there are exceptions to the general

rule.  The Tenth Circuit has directed courts to "consider and weigh in each case, and at every

stage of the litigation, the values of judicial economy, convenience, fairness, and comity" when

determining whether to exercise supplemental jurisdiction.[52]

Here, the factors confirm that the Court should decline to exercise supplemental

jurisdiction.  Plaintiffs' federal claims are being dismissed at the pleading stage and before any

discovery has taken place.  All the parties are Kansas residents.  Resolution of the claims would

require the Court to take substantive positions on Kansas state law.  And nothing about the state-

law claims implicate federal interests or bear on federal policy issues.  The Court, in its

discretion, therefore declines to exercise supplemental jurisdiction over the remaining state-law

---

[49] Doc 1-1 pts. IV.B, V.1–2.

[50] 28 U.S.C. § 1367(c)(3).

[51] *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966); *accord King v. Fleming*, 899 F.3d 1140, 1154 (10th Cir. 2018).

[52] *King*, 899 F.3d at 1154.

claims.  But as described below, the Court grants Defendants' motion to dismiss the federal claims with leave to amend.  Accordingly, the Court does not reach Plaintiffs' state-law claims at this time and expresses no view on whether Plaintiffs have stated any viable claim under Kansas law.

### 5.  Amended Complaint Required

In light of the above, the Court concludes that Plaintiffs' federal claims are subject to dismissal under Rule 12(b)(6) because the Petition does not state a plausible claim for relief. However, a *pro se* litigant is generally entitled to notice and an opportunity to amend the complaint to overcome any deficiency unless it is clear that no amendment can cure the defect.[53] Because Plaintiffs proceed *pro se* and amendment may cure at least some of the defects cited above, the Court will grant Plaintiffs an opportunity to amend to remedy the deficiencies identified in this Order.  As such, Plaintiffs must file an amended complaint within twenty-one days of this Order.  Failure to file an amended complaint within this time will result in dismissal of this action without further notice.  The Court notes that, in the event Plaintiffs fail to timely file an amended complaint and the Court dismisses Plaintiffs' § 1983 claims—the claims in which the Court has original jurisdiction—the Court will decline to exercise its supplemental jurisdiction over any state-law claims to the extent the Petition asserts them and will remand those claims back to state court.[54]

---

[53] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[54] *See* 28 U.S.C. § 1367(c)(3); *Smith v. City of Enid ex rel. Enid City Comm'n*, 149 F.3d 1151, 1156 (10th Cir. 1998) ("When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims.").

### B. Insufficient Service of Process

The Court next turns to Defendant Leavenworth County's argument that Plaintiffs' claims should be dismissed for insufficient service of process. Under Fed. R. Civ. P. 4(j)(2), service upon a state or local government defendant who has not filed a waiver of service may be effected by: "(A) delivering a copy of the summons and of the complaint to its chief executive officer; or (B) serving a copy of each in the manner prescribed by that state's law for serving a summons or like process on such a defendant." Under Kansas law, a plaintiff may effect service by return receipt delivery, personal service, or residence service.[55] To serve a county under Kansas law, a plaintiff must serve (1) one of the county commissioners; (2) the county clerk; or (3) the county treasurer.[56] A plaintiff must show that they substantially complied with the applicable service requirements for process to be sufficient.[57] Kansas law defines "substantial compliance" as "compliance in respect to the essential matters necessary to assure every reasonable objective of the statute."[58]

Here, Plaintiffs attempted to serve Defendant Leavenworth County by serving the Petition on Misty Brown, the Leavenworth County Counselor, rather than on a county commissioner, the county clerk, or the county treasurer. That attempt does not satisfy Rule 4(j)(2) or K.S.A. § 60-304(d)(1). Kansas law establishes that "[w]hen the statute designates a particular recipient for process, courts must enforce that statutory procedure."[59] "Allowing [a]

---

[55] *See* K.S.A. § 60-303.

[56] K.S.A. § 60-304(d)(1).

[57] *Hueffmeier v. Talentum Empowerment Inst., LLC*, No. 22-CV-2333-JAR-ADM, 2023 WL 6849175, at *4 (D. Kan. Oct. 17, 2023).

[58] *Fisher v. DeCarvalho*, 314 P.3d 214, 219 (Kan. 2013) (quoting *Myers v. Bd. of Cnty. Comm'rs of Jackson Cnty.*, 127 P.3d 319, 323 (Kan. 2006)).

[59] *Rader v. U.S.D. 259 Wichita Pub. Sch.*, No. 10–4118–KHV, 2011 WL 2144834, at *1 (D. Kan. May 31, 2011) (citing *Oltremari v. Kan. Soc. & Rehab. Serv.*, 871 F. Supp. 1331, 1349 (D. Kan. 1994)).

plaintiff to serve someone other than those individuals listed in [§] 60-304(d) would violate the clear language of the statute and would not substantially comply with the statutory requirements."[60]  Because Plaintiffs served the county counselor rather than one of the statutorily enumerated county officials, they did not substantially comply with the applicable service requirements, and service was therefore insufficient under Rule 4(j)(2) and K.S.A. § 60-304(d)(1).

However, before dismissing a claim for failure to serve process, the Tenth Circuit requires that district courts inquire whether a plaintiff has demonstrated good cause for failing to timely effect proper service.[61]  If a plaintiff shows good cause, they are entitled to a mandatory extension of time to effect proper service.[62]  But even in the absence of good cause, a court may, in its discretion, still grant a permissive extension of time.[63]  Relevant factors for a court to consider when deciding whether to grant a permissive extension include whether a plaintiff is proceeding *pro se*, whether the defendant had actual notice of the lawsuit, the danger of prejudice to the defendant, the length of the delay, and whether the applicable statute of limitations would bar a re-filed action.[64]  "Generally, when the Court finds that service is

---

[60] *Rivera v. Riley Cnty. L. Bd.*, No. 11-CV-02067-JAR-JPO, 2011 WL 4686554, at *3 (D. Kan. Oct. 4, 2011) (finding that a plaintiff did not substantially comply with K.S.A. § 60-304(d) when the plaintiff did not serve any of the individuals designated to accept service for a government agency under the statute); *Schwab v. Kansas*, No. 16-CV-4033-DDC-KGS, 2016 WL 4039613, at *3–4 (D. Kan. July 28, 2016) (holding that a plaintiff did not substantially comply with K.S.A. § 60-304(d)(1) when the plaintiff served a receptionist at the county attorney's office not one of the county commissioners, the county clerk, or the county treasurer); *see Blogref v. Sedgwick Cnty. Sheriff Dep't*, No. CV 18-2471-KHV, 2019 WL 2174058, at *1 (D. Kan. May 20, 2019) ("[W]hen the statute designates a particular officer to whom process must be delivered and with whom it may be left, . . . no other officer or person can be substituted in her place." (quoting *Knight v. Kansas*, No. 89-2392-0, 1990 WL 154206, at *2 (D. Kan. Sept. 6, 1990))).

[61] *Espinoza v. United States*, 52 F.3d 838, 841 (10th Cir. 1995).

[62] *Id.*

[63] *Id.*

[64] *See, e.g.*, *Moore v. Teamsters Local 41*, No. 14-2122-JTM, 2015 WL 859074, at *2 (D. Kan. Feb. 27, 2015); *Hopkins v. Clinton*, No. CV 09-185 JCH/CG, 2009 WL 10665432, at *2 (D.N.M. Oct. 30, 2009).

insufficient but curable, it should quash service and give plaintiff an opportunity to re-serve defendant."[65]

Here, because Plaintiffs have not responded to Defendants' motion to dismiss, the Court finds that Plaintiffs have not shown good cause for failing to effect proper service and thus are not entitled to a mandatory extension. Nonetheless, the relevant factors support granting a permissive extension in this case: Plaintiffs proceed *pro se*; Defendant Leavenworth County has received notice of the lawsuit and has demonstrated, through its present motion, its ability to defend against it; and nothing in the record suggests that permitting re-service would prejudice Defendant Leavenworth County, particularly given that Plaintiffs must amend in order to avoid dismissal. Accordingly, the Court in its discretion quashes service and grants Plaintiffs sixty days from the date of this Order to effect proper service of an amended complaint upon the Board of County Commissioners of Leavenworth County, in accordance with Fed. R. Civ. P. 4(j)(2) and K.S.A. § 60-304(d)(1). If Plaintiffs fail to timely effect service within the time permitted, Defendant Leavenworth County will be dismissed from this action.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendants' Motion to Dismiss (Doc. 3) is **granted with leave to amend within twenty-one (21) days from the date of this Order**. If Plaintiffs fail to file an amended complaint within the time permitted, this case will be dismissed.

**IT IS FURTHER ORDERED** that if Plaintiffs opt to amend, they shall have **sixty (60) days** from the date of this Order to effect proper service of that amended complaint on the Board of County Commissioners of Leavenworth County. If Plaintiffs fail to timely effect service of

---

[65] *Fisher v. Lynch*, 531 F. Supp. 2d 1253, 1269 (D. Kan. 2008).

the amended complaint within 60 days, Defendant Leavenworth County will be dismissed from

this action.

**IT IS SO ORDERED.**

Dated: October 15, 2025

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE