## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **BRYAN ZESIGER and GINA MONTALBANO ZESIGER,** | |
| **Plaintiffs,** | |
| **v.** | **Case No. 2:25-CV-02324-JAR-RES** |
| **BOARD OF COUNTY COMMISSIONERS OF LEAVENWORTH COUNTY, KANSAS, et al.,** | |
| **Defendants.** | |

## MEMORANDUM AND ORDER

Plaintiffs Bryan Zesiger ("Bryan") and Gina Montalbano Zesiger ("Gina"), proceeding *pro se*, bring this removal action against Defendants the Board of County Commissioners of Leavenworth County, Kansas ("Leavenworth County"); Misty Brown in her official capacity as the Leavenworth County Counselor; and Mike Stieben in his official capacity as a Leavenworth County Commissioner.  Plaintiffs allege that Defendants' handling of their Kansas Open Records Act ("KORA") requests violated Kansas law and the United States Constitution.

The Court previously dismissed the federal claims asserted in Plaintiffs' original Complaint under Fed. R. Civ. P. 12(b)(6) and declined to exercise supplemental jurisdiction over Plaintiffs' state-law claims, but granted Plaintiffs leave to amend.[1]  Plaintiffs thereafter filed an Amended Complaint.[2]  Defendants then moved to dismiss the Amended Complaint on claim-

---

[1] Doc. 9.

[2] Doc. 10.

preclusion grounds.[3]  The Court granted that motion in part, dismissing only Bryan's federal claims under § 1983 asserted in Counts I through V of the Amended Complaint.[4]

This matter is now before the Court on Defendants' Motion for Judgment on the Pleadings (Doc. 35).  Plaintiffs filed a response to Defendants' motion.[5]  Defendants did not file a reply, and the time to do so has expired.[6]  Having reviewed the parties' filings, the Court is prepared to rule.  For the reasons stated below, the Court grants Defendants' motion.

## I.    Legal Standard

To survive a motion for judgment on the pleadings brought under Fed. R. Civ. P. 12(c), a complaint must satisfy the familiar plausibility standard from Fed. R. Civ. P. 12(b)(6).[7]  In other words, a complaint must contain factual allegations that, assumed to be true, "raise a right to relief above the speculative level"[8] and must include "enough facts to state a claim for relief that is plausible on its face."[9]  "[M]ere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim."[10]  The Court must accept the non-moving party's factual allegations as true and may not dismiss on the ground that it appears unlikely the allegations can be proven.[11]  And because Plaintiffs proceed *pro se*, the Court must construe their filings liberally and hold them to

---

[3] Doc. 18.

[4] Doc. 28.

[5] Doc. 47.

[6] D. Kan. Rule 6.1(d)(1) ("Replies must be filed within 14 days after the response is served.").

[7] *See Atl. Richfield Co. v. Farm Credit Bank*, 226 F.3d 1138, 1160 (10th Cir. 2000).

[8] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing 5C Wright & Miller, Federal Practice & Procedure § 1216 (3d ed. 2004)).

[9] *Id*. at 570.

[10] *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555).

[11] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

a less stringent standard than formal pleadings drafted by attorneys.[12]  However, the Court cannot assume the role of advocate,[13] nor can the Court "supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf."[14]

## II.    Background

The following facts are alleged in Plaintiffs' Amended Complaint.[15]  For purposes of deciding this motion, the Court assumes these facts to be true and draws all reasonable inferences in Plaintiffs' favor.

Plaintiffs operate Z&M Twisted Vines, a federally recognized agricultural entity engaged in viticulture, enology, and agritourism.  Leavenworth County required Plaintiffs to obtain a special use permit and assessed commercial-level taxation against their agricultural operations. By contrast, Leavenworth County did not require Forever Fencing, LLC ("Forever Fencing"), a commercial enterprise owned by Raymond Reynolds, to obtain or maintain a special use permit. Forever Fencing previously challenged Leavenworth County's special use permit requirement in federal court.  Although Leavenworth County prevailed in that action, Leavenworth County nevertheless did not enforce the permit requirement against Forever Fencing.

On May 14, 2025, Bryan submitted a series of KORA requests to Leavenworth County seeking records relating to Forever Fencing to determine whether Leavenworth County had imposed the same permitting requirements on Forever Fencing that it had imposed on Plaintiffs. That same day, Leavenworth County personnel disclosed the existence of Bryan's KORA requests to Reynolds and to Leavenworth County Commissioner Mike Stieben.

---

[12] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[13] *Id.*

[14] *Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997).

[15] Doc. 10.

Also on May 14, 2025, Leavenworth County Counselor Misty Brown denied sixteen of the KORA requests at issue. Brown stated that, based on the volume and frequency of past and current requests, the requests appeared to be intended to "disrupt, harass, or place an undue burden on agency operations," and she therefore denied them.[16] Brown's denial did not identify specific statutory exemptions or provide an individualized analysis for each request.

Sometime after Bryan submitted the May 14 KORA requests, Brown contacted attorney Ryan Kriegshauser, who at the time represented Forever Fencing, and disclosed the existence of Bryan's KORA requests to him. Kriegshauser subsequently relayed that information to Reynolds. On May 25, 2025, licensed surveyor Joe Herring told Plaintiffs that Stieben had told Herring that "Zesiger's . . . filings are the reason County work is being delayed."[17]

## III.    Discussion

In the Amended Complaint, Plaintiffs assert the following claims under 42 U.S.C. § 1983: denial of access to the courts (Count I), procedural due process (Count II), First Amendment retaliation (Count III), municipal liability under *Monell* (Count IV), and defamation under a stigma-plus theory (Count V). Count V also appears to assert a separate defamation claim under Kansas law. Plaintiffs further assert state-law claims for violation of KORA (Count VI) and violation of sections 1 and 15 of the Kansas Bill of Rights (Count VII). In its prior Order, the Court dismissed Bryan's federal claims asserted in Counts I through V as barred by the doctrine of claim preclusion. Thus, Gina's federal claims asserted in Counts I through V and Plaintiffs' state-law claims asserted in Counts V, VI, and VII remain pending. Defendants now

---

[16] *Id.* ¶ 15.

[17] *Id.* ¶ 20.

move for judgment on the pleadings on Gina's remaining federal claims and ask the Court to decline supplemental jurisdiction over Plaintiffs' state-law claims.

Before turning to the claims addressed by Defendants' motion, the Court notes that the Amended Complaint appears to assert an equal protection claim separate from the enumerated counts. Because the Court's prior Order dismissed only Bryan's federal claims asserted in Counts I through V, the Court liberally construes the Amended Complaint to assert an equal protection claim that remains pending as to both Plaintiffs. Out of an abundance of caution, the Court first addresses that claim before turning to the remaining claims challenged by Defendants' motion.

### 1. Unenumerated Claim – Equal Protection

In a section of the Amended Complaint separate from their other claims, Plaintiffs allege that Leavenworth County required Plaintiffs to obtain a special use permit and subjected their agricultural operations to commercial-level taxation, while allegedly not requiring Forever Fencing to obtain or maintain a special use permit, in violation of the Equal Protection Clause. Defendants do not move for judgment on the pleadings on this claim or otherwise address it in their motion.

Ordinarily, the Court would not resolve a claim not addressed by the parties' briefing.[18] Nonetheless, this claim warrants consideration because this District has twice recently addressed materially similar constitutional claims brought by Plaintiffs arising from Leavenworth County allegedly requiring Plaintiffs to obtain a special use permit and subjecting them to commercial tax classification.

---

[18] *See United States v. Sineneng-Smith*, 590 U.S. 371, 375 (2020) (explaining that courts "rely on the parties to frame the issues for decision" and "normally decide only questions presented by the parties").

In *Zesiger v. Board of County Commissioners of Leavenworth County*,[19] Bryan and Gina brought constitutional claims against Leavenworth County, Brown in her official capacity, and Melissa Johnson in her official capacity.[20] Bryan and Gina alleged that the defendants' tax classification of their property and imposition of a special use permit violated various provisions of the United States Constitution.[21] This Court dismissed Bryan and Gina's constitutional claims as barred by the statute of limitations and entered judgment in the defendants' favor.[22]

Likewise, in *Zesiger v. Kelly*,[23] Bryan and Gina brought constitutional and state-law claims against numerous state and county defendants, including Leavenworth County and Brown in her official capacity.[24] Bryan and Gina again alleged that the defendants violated provisions of the United States Constitution by classifying part of their property as commercial rather than agricultural and requiring Bryan and Gina to obtain a special use permit.[25] The court found that Bryan and Gina's constitutional claims were barred by the statute of limitations and dismissed them.[26]

These prior decisions raise the issue of whether Plaintiffs' present equal protection claim is barred by the doctrine of claim preclusion. "Claim preclusion is an affirmative defense, which, as a general rule, courts may not ordinarily consider sua sponte."[27] Nonetheless, a court

---

[19] No. 25-CV-02323-JAR-RES, 2026 WL 710098 (D. Kan. Mar. 13, 2026).

[20] *Id.* at *1.

[21] *Id.* at *1–3.

[22] *Id.* at *4–5.

[23] No. 25-2354-EFM-RES, 2026 WL 746369 (D. Kan. Mar. 17, 2026).

[24] *Id.* at *5.

[25] *Id.* at *1–2.

[26] *Id.* at *5–6.

[27] *Cline v. Ibanez*, No. 20-CV-03136-TC, 2023 WL 6199979, at *3 (D. Kan. Sept. 22, 2023).

may raise claim preclusion sua sponte when "special circumstances" exist.[28]  "One such circumstance is when a court is on notice that it has previously decided the issue presented, as sua sponte consideration furthers the court's own interest in the avoidance of unnecessary judicial waste."[29]

Here, as noted above, the Court is on notice that Plaintiffs have previously litigated constitutional claims arising from Leavenworth County's alleged imposition of a special use permit requirement and commercial tax classification of Plaintiffs' property.  Accordingly, the Court considers sua sponte whether Plaintiffs' equal protection claim is barred by the doctrine of claim preclusion.

Under the doctrine of claim preclusion, a party may not assert "a legal claim that was or could have been the subject of a previously issued final judgment."[30]  The principle underlying this doctrine "is that a party who once has had a chance to litigate a claim before an appropriate tribunal usually ought not have another chance to do so."[31]  "Federal law governs the scope of preclusive effect given to federal-court decisions."[32]  Under federal law, claim preclusion applies if the following three elements are established: (1) a final judgment on the merits in a prior action; (2) both cases include the same cause of action; and (3) both actions involve the same parties or their privies.[33]  However, even if these elements are satisfied, claim preclusion does

---

[28] *Arizona v. California*, 530 U.S. 392, 412 (2000).

[29] *Denver Homeless Out Loud v. Denver*, 32 F.4th 1259, 1270 (10th Cir. 2022) (citation modified).

[30] *Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 847 F.3d 1221, 1239 (10th Cir. 2017) (quoting *MACTEC, Inc. v. Gorelick*, 427 F.3d 821, 831 (10th Cir. 2005)).

[31] *Id.* (quoting *Stone v. Dep't of Aviation*, 453 F.3d 1271, 1275 (10th Cir. 2006)).

[32] *Atkins v. Heavy Petroleum Partners, LLC*, 86 F. Supp. 3d 1188, 1204 (D. Kan. 2015) (quoting *Stan Lee Media, Inc. v. Walt Disney Co.*, 774 F.3d 1292, 1297 (10th Cir. 2014)).

[33] *Watkins v. Genesh, Inc.*, 135 F.4th 1224, 1229 (10th Cir. 2025).

not apply if the opposing party "did not have a 'full and fair opportunity to litigate' the claim in the prior action."[34]

Here, all three elements of claim preclusion are satisfied. First, both prior actions resulted in final judgments on the merits. In both cases, the court dismissed Plaintiffs' constitutional claims as barred by the statute of limitations. And "a dismissal on limitations grounds is a judgment on the merits" for purposes of claim preclusion.[35]

Second, Plaintiffs' present equal protection claim involves the same cause of action as the claims they litigated in the two prior actions. For purposes of claim preclusion, "a cause of action includes all claims or legal theories of recovery that arise from the same transaction, event, or occurrence."[36] Plaintiffs' present equal protection claim arises from the same alleged conduct at issue in the prior cases: Leavenworth County's alleged imposition of a special use permit requirement and commercial tax classification of Plaintiffs' property.

Third, the prior actions and this action involve the same parties or their privies. Bryan and Gina were plaintiffs in both prior actions and are Plaintiffs here. Leavenworth County and Brown, in her official capacity, were defendants in the prior actions and are Defendants here. Although Stieben was not a defendant in the prior actions, he is sued here only in his official capacity. And "[a] government official who is sued in his official capacity is in privity with the government for which he works."[37] Because Stieben is sued here in his official capacity as a

---

[34] *Lenox*, 847 F.3d at 1239 (quoting *MACTEC*, 427 F.3d at 831 & n.6).

[35] *Murphy v. Klein Tools, Inc.*, 935 F.2d 1127, 1128–29 (10th Cir. 1991).

[36] *Watkins*, 135 F.4th at 1229–30 (citation modified) (applying the transactional approach articulated in the Restatement (Second) of Judgments).

[37] *Wilson v. City of Frankfort*, No. 25-CV-2099-EFM-BGS, 2025 WL 1993510, at *3 (D. Kan. July 17, 2025) (citing *Buhendwa v. Reg'l Transp. Dist.*, 82 F. Supp. 3d 1259, 1271 (D. Colo. 2015)).

Leavenworth County Commissioner, he is in privity with Leavenworth County, which was a defendant in the prior actions.

Having found that all three elements of claim preclusion are established, the Court considers whether the record indicates that Plaintiffs lacked a full and fair opportunity to litigate in the prior actions. The Tenth Circuit has explained that "the absence of a full and fair opportunity to litigate is more appropriately treated as an exception to the application of claim preclusion," and that this inquiry is a "narrow exception" that applies only where due-process deficiencies undermine the fundamental fairness of the prior proceeding.[38] Nothing in the record suggests that this narrow exception applies here. Plaintiffs initiated the prior actions, participated in those cases, and had the opportunity to present their arguments. Nor does the record reflect any procedural limitation or due-process deficiency that prevented Plaintiffs from fully and fairly litigating their claims. Thus, Plaintiffs had a full and fair opportunity to litigate their equal protection claim in the prior actions, and claim preclusion bars that claim here. The Court therefore sua sponte dismisses Plaintiffs' equal protection claim.

### 2. Count I – Denial of Access to Courts

Having addressed Plaintiffs' unenumerated equal protection claim, the Court turns to the remaining federal claims asserted by Gina in Counts I through V of the Amended Complaint. In Count I, Gina alleges that Defendants denied her access to the courts in violation of the First and Fourteenth Amendments. To state a plausible claim for unconstitutional denial of access to the courts, a "plaintiff must identify a 'nonfrivolous,' 'arguable' underlying claim" that has been frustrated or impeded by the official act or acts that interfere with access to the courts.[39] "[T]he

---

[38] *Johnson v. Spencer*, 950 F.3d 680, 708–09 (10th Cir. 2020).

[39] *Christopher v. Harbury*, 536 U.S. 403, 415 (2002).

underlying cause of action . . . is an element that must be described in the complaint" as though it was "being independently pursued." [40]  In other words, the underlying claim must be described well enough to permit evaluation of whether it is "nonfrivolous" and "arguable."[41]

Here, Gina alleges that Defendants interfered with her right of access to the courts by disclosing the existence of the KORA requests to private third parties, categorically denying sixteen of those requests, and making false public statements in retaliation.  Gina further alleges that these acts deprived her of records necessary to "defend [her] property classification, taxation status, and regulatory compliance," and frustrated or delayed "meritorious claims in state and federal forums."[42]

These allegations are insufficient to state an access-to-courts claim.  Although Gina generally refers to possible disputes concerning property classification, taxation status, and regulatory compliance, these broad categories do not identify a precise underlying claim as though it were "being independently pursued."[43]  Nor do they allow the Court to evaluate whether any underlying claim is "nonfrivolous" or "arguable."[44]  Gina thus fails to state a plausible unconstitutional denial-of-access-to-the-courts claim.  Accordingly, Defendants' motion for judgment on the pleadings is granted as to Count I.

---

[40] *Id.* at 415–17.

[41] *Id.* at 416.

[42] Doc. 10 ¶ 43.

[43] *See Christopher*, 536 U.S. at 417.

[44] *See id.* at 416.

### 3. Count II – Procedural Due Process; Count V – Stigma Plus

In Count II, Gina alleges that Defendants violated her procedural due process rights. To plausibly state a procedural due process claim, a plaintiff must establish two elements: (1) that she had a constitutionally protected liberty or property interest such that the due process protections were applicable, and (2) that she was not afforded an appropriate level of process.[45]

Gina alleges that she has protected liberty and property interests in (1) her reputation as a licensed agricultural producer, (2) her continued eligibility for federal and state agricultural program benefits, and (3) her lawful use of agricultural land free from arbitrary regulation. Defendants move for judgment on the pleadings on all three theories. In response, however, Gina addresses only the portion of Count II based on her reputation as a licensed agricultural producer. She does not respond to Defendants' arguments that she has not plausibly alleged protected liberty or property interests in continued eligibility for federal or state agricultural programs or in the lawful use of agricultural land free from arbitrary regulation. By failing to address those arguments, Gina has abandoned those theories.[46] Thus, Defendants' motion for judgment on the pleadings is granted to the extent Count II is premised on either asserted interest. The Court therefore considers whether Gina plausibly states a procedural due process claim based only on her asserted interest in her reputation as a licensed agricultural producer.

Stigmatizing statements by government actors that damage someone's good name or reputation without the opportunity for a name-clearing hearing can, under certain circumstances, violate their rights to procedural due process.[47] "However, stigmatization or reputational damage

---

[45] *Al-Turki v. Tomsic*, 926 F.3d 610, 614 (10th Cir. 2019).

[46] *Zorn v. City of Marion*, 774 F. Supp. 3d 1279, 1309 n.6 (D. Kan. 2025) (treating "theory of recovery" as abandoned where the plaintiff's response did not answer the defendant's arguments or discuss the theory).

[47] *Hinkle v. Beckham Cnty. Bd. of Cnty. Comm'rs*, 962 F.3d 1204, 1229–30 (10th Cir. 2020).

alone, no matter how egregious, is not sufficient to support a § 1983 cause of action."[48]  This is because "reputation alone, apart from some more tangible interests such as employment, is [n]either 'liberty' [n]or 'property' by itself sufficient to invoke the procedural protection of the Due Process Clause."[49]

Instead, a plaintiff must meet what courts commonly describe as the "stigma-plus" standard.[50]  The stigma-plus standard contains two distinct elements: "(1) the government made a false statement about the plaintiff that was sufficiently derogatory to injure his reputation, and that (2) the plaintiff experienced a governmentally imposed burden that significantly altered his status as a matter of state law."[51]  To meet the second prong, "the plaintiff must show that as a result of the defamation, a right or status previously recognized by state law was distinctly altered or extinguished."[52]

Classic examples of a "significant, material change in a legal status" include "losing the right to drive a car or being wrongfully registered as a sex offender."[53]  Other examples include losing the right to buy liquor, wholly preventing any federal employment, or barring a person from attending school.[54]  In contrast, injuries such as psychological trauma or impaired prospective employment opportunities do not alter a person's legal status.[55]

---

[48] *McGhee v. Draper*, 639 F.2d 639, 643 (10th Cir. 1981).

[49] *Paul v. Davis*, 424 U.S. 693, 701 (1976); *see also Brown v. Montoya*, 662 F.3d 1152, 1167 (10th Cir. 2011) ("[D]efamatory publications, however seriously they may have harmed respondent's reputation, did not deprive him of any 'liberty' or 'property' interests protected by the Due Process Clause." (quoting *Paul*, 424 U.S. at 712)).

[50] *See Hinkle*, 962 F.3d at 1229.

[51] *Progeny v. City of Wichita*, No. 21-CV-01100-EFM-ADM, 2024 WL 359345, at *7 (D. Kan. Jan. 30, 2024) (quoting *Hinkle*, 962 F.3d at 1230).

[52] *Al-Turki v. Tomsic*, 926 F.3d 610, 617 (10th Cir. 2019) (citation modified).

[53] *Hinkle*, 962 F.3d at 1231.

[54] *Al-Turki*, 926 F.3d at 617 (summarizing cases).

[55] *See Hinkle*, 962 F.3d at 1230–31.

Here, Gina alleges that Stieben falsely told a third party that Plaintiffs' filings were responsible for delaying Leavenworth County work.  Assuming that this statement is sufficiently derogatory to satisfy the first part of her stigma-plus claim, Count II nonetheless fails at the second step because Gina has not plausibly alleged a "significant, material change in a legal status."[56]  Gina asserts that "the County's refusal to produce public records and its continued retaliation . . . altered Plaintiffs' legal status."[57]  But that allegation is conclusory.[58]  Gina does not explain how the refusal to produce records or any "continued retaliation" significantly and materially changed a right or status recognized by state law.  Nor does she specify what "continued retaliation" means in this context.  And to the extent Gina alleges that the denials of the KORA requests themselves were the alteration of her legal status, that allegation is insufficient.[59]  Gina alleges only that Leavenworth County denied the KORA requests.  She does not allege that Leavenworth County permanently barred her from submitting future KORA requests, foreclosed any administrative or judicial remedy, revoked any license or entitlement, or otherwise changed her legal rights or obligations under Kansas law.  Therefore, Defendants' motion for judgment on the pleadings is granted as to Count II.

Count V also asserts a § 1983 claim for defamation under a stigma-plus theory.  To the extent Gina asserts a separate, duplicative § 1983 stigma-plus claim, that claim fails for the same

---

[56] *Hinkle*, 962 F.3d at 1231.

[57] Doc. 10 ¶ 70.

[58] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) ("[C]onclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based.").

[59] *See Moles v. Smith*, No. 25-CV-01008-DCN, 2025 WL 3677000, at *10 (N.D. Ohio Dec. 18, 2025) (rejecting a plaintiff's stigma-plus claim where the alleged "*limitations* placed on her desired means of civic participation," including "full disclosure of all public records requests," did "not amount to an exclusion" or show that plaintiff was "deprived of any liberty or property interest protected by the Fourteenth Amendment").

reasons discussed above.  As such, Defendants' motion for judgment on the pleadings is also granted as to the § 1983 stigma-plus claim asserted in Count V.

### 4.   Count III – First Amendment Retaliation

In Count III, Gina alleges that Defendants retaliated against her in violation of the First Amendment.  To plausibly state a claim for First Amendment retaliation, a plaintiff must show: (1) the plaintiff was engaged in constitutionally protected activity; (2) the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct.[60]

Here, Gina's First Amendment retaliation claim fails at step one.  Count III identifies the alleged protected activity as the submission of KORA requests concerning Leavenworth County's zoning and permitting treatment of Forever Fencing.  But the Amended Complaint alleges that Bryan, not Gina, submitted the May 14, 2025 KORA requests.  It does not allege that Gina submitted those requests or otherwise personally participated in the conduct alleged to be constitutionally protected.[61]  Nonetheless, the Supreme Court has clarified that a plaintiff may state a First Amendment retaliation claim even without having personally engaged in protected activity when the government takes adverse action because it mistakenly believes that the plaintiff engaged in such activity.[62]  But the Amended Complaint does not allege that Defendants mistakenly believed Gina submitted or participated in the KORA requests.  Gina therefore has

---

[60] *McLinn v. Thomas Cnty. Sheriff's Dep't*, 535 F. Supp. 3d 1087, 1105 (D. Kan. 2021).

[61] *See Doe v. Nash Cnty. Bd. of Educ.*, No. 24-CV-259-D, 2025 WL 820671, at *6 (E.D.N.C. Mar. 13, 2025) (holding that a plaintiff failed to satisfy the first element of a First Amendment retaliation claim where his claim "d[id] not stem from his protected speech, but from his mother's protected speech," and he therefore "did not engage in protected speech").

[62] *Heffernan v. City of Paterson*, 578 U.S. 266, 270–73 (2016).

not plausibly alleged that Defendants retaliated against her because of her own actual or perceived protected activity.

Moreover, even if the Amended Complaint alleged that Gina submitted or participated in submitting the KORA requests, or that Defendants mistakenly perceived her as having done so, her claim would still fail. In *Allen v. Lang*,[63] the Tenth Circuit held that a plaintiff fails to establish constitutionally protected activity where a First Amendment retaliation claim is based only on public-records requests under a state open-records act.[64] The court explained that "there is no general First Amendment right of access to all sources of information within governmental control,"[65] and that "[n]either the First Amendment nor the Fourteenth Amendment mandates a right of access to government information or sources of information within the government's control."[66] Thus, the submission of the KORA requests cannot supply the protected activity necessary to support Gina's First Amendment retaliation claim.

And although Gina describes the KORA requests as part of a broader effort involving "petitioning, comparator investigation, enforcement inquiry, agricultural advocacy, and legal-remedy preparation,"[67] the Amended Complaint does not allege any purported protected activity apart from those KORA requests. Under *Allen*, those requests, without more, are not constitutionally protected for purposes of a First Amendment retaliation claim. Because Gina has not plausibly alleged that she engaged in constitutionally protected activity, she fails to plead

---

[63] 738 F. App'x 934 (10th Cir. 2018).

[64] *Id.* at 938–40.

[65] *Id.* at 939 (quoting *Smith v. Plati*, 258 F.3d 1167, 1178 (10th Cir. 2001)).

[66] *Id.* (quoting *Houchins v. KQED, Inc.*, 438 U.S. 1, 15 (1978)).

[67] Doc. 47 at 5–6.

the first element of a First Amendment retaliation claim.  Defendants' motion for judgment on the pleadings is therefore granted as to Count III.

### 5.    Count IV – Municipal Liability

In Count IV, Gina asserts a claim for municipal liability under *Monell v. Department of Social Services of the City of New York*.[68]  Under *Monell*, an injured plaintiff may hold a municipal entity liable "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury."[69]  A *Monell* claim has three general requirements: (1) an underlying injury to a constitutional right of the plaintiff; (2) a municipal policy or custom, and (3) a direct causal link between the policy or custom and the injury.[70]

Here, Gina has not plausibly alleged an underlying injury to a constitutional right.  As explained above, all of Gina's remaining constitutional claims fail as pleaded.  And, as the Tenth Circuit has explained, "[a] municipality may not be held liable where there was no underlying constitutional violation by any of its officers."[71]  Accordingly, Defendants' motion for judgment on the pleadings is granted as to Count IV.

### 6.    State Law Claims

Having disposed of all federal claims over which the Court has original jurisdiction and finding no basis for diversity jurisdiction, the Court considers whether to exercise supplemental jurisdiction over Plaintiffs' remaining state-law claims.

---

[68] 436 U.S. 658 (1978).

[69] *Id.* at 694.

[70] *See Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 770 (10th Cir. 2013).

[71] *Fenn v. City of Truth or Consequences*, 983 F.3d 1143, 1150 (10th Cir. 2020) (quoting *Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir. 1993)).

Whether to exercise supplemental jurisdiction is committed to the Court's sound discretion.[72]  "The Supreme Court has encouraged the practice of dismissing state claims or remanding them to state court when the federal claims to which they are supplemental have dropped out before trial."[73]  "When the parties have already expended a great deal of time and energy on the state law claims, it is appropriate for the district court to retain supplemented state claims after dismissing all federal questions."[74]  "If, however, the parties have not shown they have spent a great deal of time on the state law claims, the district court should normally dismiss supplemental state law claims after all federal claims are dismissed."[75]  "Notions of comity and federalism demand that a state court try its own lawsuits, absent compelling reasons to the contrary."[76]  The Tenth Circuit has "repeatedly recognized that this is the preferred practice."[77]

Here, the Court has disposed of all federal claims at an early stage of the litigation, before the parties have spent significant time litigating Plaintiffs' state-law claims.  No compelling reason supports retaining jurisdiction over those claims, and the state court is in a better position to evaluate them under Kansas law.  Accordingly, the Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining state-law claims and remands them to state court.

---

[72] *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 172–73 (1997); *see also Anglemyer v. Hamilton Cty. Hosp.*, 58 F.3d 533, 541 (10th Cir. 1995).

[73] *Barnett v. Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C.*, 956 F.3d 1228, 1238 (10th Cir. 2020) (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)).

[74] *Villalpando ex rel. Villalpando v. Denver Health & Hosp. Auth.*, 65 F. App'x 683, 688 (10th Cir. 2003) (citation modified).

[75] *Id.* (citation modified).

[76] *Thatcher Enters. v. Cache Cnty. Corp.*, 902 F.2d 1472, 1478 (10th Cir. 1990).

[77] *Gaston v. Ploeger*, 297 F. App'x 738, 746 (10th Cir. 2008).

17

### 7.  Leave to Amend

Lastly, the Court notes that Plaintiffs' response to Defendants' motion for judgment on the pleadings states that, if the Court grants Defendants' motion, "Plaintiffs request leave under Rule 15(a)(2) to file a targeted amendment limited to the deficiency identified by the Court."[78] Plaintiffs' request is improper.

Fed. R. Civ. P. 15(a)(2) provides that courts "should freely give leave [to amend] when justice so requires."  "The liberal granting of motions for leave to amend reflects the basic policy that pleadings should enable a claim to be heard on its merits."[79]  But this "liberal policy" of permitting amendment "is not without limits."[80]  For instance, "a request for leave to amend must give adequate notice to the district court and to the opposing party of the basis of the proposed amendment."[81]  "Without this information the district court is not required to recognize, let alone grant, a motion to amend."[82]  And the Tenth Circuit made clear that "a bare request to amend in response to a motion to dismiss is insufficient to place the court and opposing parties on notice of the plaintiff's request to amend and the particular grounds upon which such a request would be based."[83]

Here, Plaintiffs' bare request for leave to amend, made only in their response to Defendants' motion, does not provide the Court or Defendants adequate notice of the basis for a

---

[78] Doc. 47 at 16.

[79] *Calderon v. Kansas Dep't of Soc. & Rehab. Servs.*, 181 F.3d 1180, 1186 (10th Cir. 1999).

[80] *Albers v. Bd. of Cnty. Comm'rs of Jefferson Cnty.*, 771 F.3d 697, 706 (10th Cir. 2014).

[81] *Calderon*, 181 F.3d at 1186–87.

[82] *Hall v. Witteman*, 584 F.3d 859, 868 (10th Cir. 2009).

[83] *Borsody v. Frontier Heritage Cmtys.*, No. 25-3205, slip op. 19–20 (10th Cir. June 15, 2026) (affirming denial of a *pro se* plaintiff's request for leave to amend made in response to a motion to dismiss because "a bare request to amend" did not place the court and opposing parties "on notice of the plaintiff's request to amend and the particular grounds upon which such a request would be based").

proposed amendment.  Plaintiffs do not identify the additional facts, claims, or legal theories they would assert, explain how any amendment would cure the deficiencies discussed above, or otherwise indicate the substance of a proposed amended complaint.  Without that information, the Court "is not required to recognize, let alone grant" Plaintiffs' request for leave to amend.[84]  Plaintiffs' request therefore does not warrant leave to amend and is denied.

      **IT IS THEREFORE ORDERED BY THE COURT** that Defendants' Motion for Judgment on the Pleadings (Doc. 35) is **granted** as to all remaining federal claims asserted in the Amended Complaint.  The Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining state-law claims.  The Clerk is instructed to remand the remaining state-law claims to the Leavenworth County District Court.

      **IT IS SO ORDERED.**

      Dated: June 22, 2026

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE

---

[84] *See Hall*, 584 F.3d at 868.